IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES L. HEBE, | CV. 07-155-AS |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| SEAGRAVE FIRE APPARATUS, LLC, | |
| Defendant. | |

ASHMANSKAS, Magistrate Judge:

Plaintiff, James Hebe ("Hebe"), brings this action seeking unpaid wages, other compensation, and statutory penalty wages. (Compl. 4.) In the alternative, Hebe seeks damages for breach of contract. Id. Before the court is the motion (Docket #4) of Defendant, Seagrave Fire Apparatus, LLC ("Seagrave"), to dismiss the action for improper venue. For the reasons that follow, the court recommends that the motion be DENIED.

Background

In 2003, Hebe and a group of investors executed agreements and created entities in order to acquire a fire-truck manufacturer and its affiliates. Seagrave is the entity created to acquire

Page -1- FINDINGS AND RECOMMENDATION

and operate the U.S. assets of the fire-truck manufacturer and its affiliates. Seagrave is a wholly-owned subsidiary of FWD Seagrave Holdings, LP ("Holdings"). Holdings is composed of general partner Seagrave Management, LLC ("General Partner"), and limited partners Hebe and FWDS Investments, LP ("FWDS"). The General Partner is owned by Hebe and FWDS. In addition to these interests, Hebe was Chairman and CEO of General Partner, President and CEO of Holdings, and President and CEO of Seagrave.

The May 8, 2003, limited partnership agreement ("LPA"), by which Hebe joined Holdings, contained the following forum selection clause:

> 12.14 <u>Forum.</u> Any action by one or more Partners against the Partnership or the General Partner or any Affiliates it may have from time to time, or by the Partnership against the General Partner or such Affiliates, which arises under or in any way relates to this Agreement, the sale of the Partnership Interests or actions taken or failed to be taken or determinations made or failed to be made by the General Partner or its Affiliates or relating to the Partnership or services provided for it or joint activities or other transactions in which it engages, including, without limitation, transactions permitted hereunder or otherwise related in any way to the Partnership, may be brought only in the state courts of the State of Delaware or the United States District Court for the District of Delaware seated in the City of Wilmington. . . .
> (Russell Decl. Ex. 5 at 24.)

Hebe's May 8, 2003, employment agreement with Seagrave did not contain a forum selection clause. (Russell Decl. Ex. 1) The parties do not dispute these background facts. Rather, the issue is whether the LPA's forum selection clause applies to Hebe's claims under the employment agreement.

### Legal Standard

A motion to dismiss for improper venue, based on a forum selection clause, is properly brought as a Fed. R. Civ. P. 12(b)(3) ("Rule 12(b)(3)") motion. <u>Argueta v. Banco Mexicano, S.A.</u>, 87 F.3d 320, 324 (9th Cir. 1996). Federal law governs the enforceability and interpretation

of forum selection clauses in diversity cases.  Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 513 (9th Cir. 1988).

Courts considering a forum selection clause-based Rule 12(b)(3) motion must resolve any factual disputes and make all reasonable inferences in favor of the non-moving party, unless and until it holds an evidentiary hearing.  Murphy v. Schneider Nat'l Inc., 362 F.3d 1133, 1138-39 (9th Cir. 2004).

A forum selection clause applies to a claim if its litigation requires interpretation of the contract containing the clause.  See Manetti-Farrow, 858 F.2d at 514 (applying forum selection clause to tort claims); Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc., 949 F.Supp. 1427, 1433-34 (N.D. Cal. 1997) (citing Manetti-Farrow and applying forum selection clause to copyright infringement claims).  A forum selection clause binds or benefits non-parties to the contract if their alleged conduct is closely related to the contractual relationship.  Id.; Graham, 949 F.Supp. at 1434.

## Discussion

Seagrave argues that the LPA's forum selection clause ("FSC") applies to Hebe's claims because it covers any action by a Partner against any Affiliate of the Partnership that in any way relates to: (1) the Partnership Agreement; (2) the sale of Partnership Interests; (3) actions taken or failed to be taken by the General Partner or its Affiliates; and (4) the Partnership or services provided for it.  (Mem. 9.)  Seagrave also argues that the FSC should be applied to Hebe's claims under Manetti-Farrow.  (Mem. 8 n.6, 13 n.7.)

Hebe responds that: (a) this is not an action by a Partner; (b) Seagrave is not an Affiliate; (c) Seagrave lacks standing to rely on the FSC; (d) his claims do not relate to (1)-(4) above; and

(e) the employment agreement is not intertwined with the LPA.  (Resp. 8-13.)

Because the court finds that Seagrave is not an Affiliate under the LPA, and that Hebe's claims do not relate to the LPA, under <u>Manetti-Farrow</u>, the court does not reach Hebe's other arguments.

**<u>Seagrave is not an "Affiliate" under the FSC:</u>**

Seagrave's first four arguments depend on the faulty premise that Seagrave is an "Affiliate" under the FSC.  According to Seagrave, the FSC covers actions by a Partner against "any Affiliate of the Partnership (Seagrave) . . . ."  (Mem. 9.)  But, by its terms, the FSC covers actions by a Partner only against "the Partnership or the General Partner or any Affiliates it may have from time to time," (Russell Decl. Ex. 5 at 24).  That the "it" following "Affiliates" refers to "the General Partner" not "the Partnership" is made clear by the next part of the FSC, which covers actions "by the Partnership against the General Partner or *such* Affiliates[.]" <u>Id.</u> (emphasis added).  This reading is reinforced by § 8.4 of the LPA, which allows a Limited Partner to transfer its interests to "(i) one of its Affiliates; . . . [or] (iii) the Partnership or one of its Affiliates," without the General Partner's consent.  (Russell Decl. Ex. 5 at 16.)  The LPA's distinctions among affiliates of the Partnership (§ 8.4(iii)), the General Partner (§ 12.4), and the Limited Partners (§ 8.4(i)), undermines Seagrave's argument that the FSC makes no such distinction.

Finally, the LPA has several "Defined Terms" including: "'**US Sub**' means Seagrave Fire Apparatus, LLC, . . . '**Subsidiary**' means either the US Sub or the Canadian Sub and '**Subsidiaries**' means the US Sub and Canadian Sub collectively."  (Russell Decl. Ex. 5 at 4 (emphases in original).)  If the FSC covered actions by a Partner against Seagrave, it would have

used one of the defined terms for Seagrave, not "any Affiliates [the General Partner] may have from time to time[.]"

The court finds that Seagrave is not an "Affiliate" under the FSC.

**Hebe's claims do not relate to the LPA:**

If the applicability of a forum selection clause is unclear, Ninth Circuit courts consider whether "the claims alleged in the complaint *relate to* the interpretation of the contract." See Graham Tech. Solutions, 949 F.Supp. at 1433 (citing Manetti-Farrow, 858 F.2d at 514). Claims relate to the contract if they "cannot be adjudicated without analyzing whether the parties were in compliance with the contract." Manetti-Farrow, 858 F.2d at 514. To the extent that the FSC's applicability to Hebe's claims is not foreclosed by the LPA itself, the court finds that Hebe's claims do not relate to the LPA.

There is no evidence that adjudicating Hebe's claims will require the analysis of the LPA. Attempting to establish this link, Seagrave points to § 8.6 of the LPA, which, Seagrave asserts, "provides Hebe with the option to require *Seagrave* to redeem all of his Limited Partnership Interests if the Employment Agreement is terminated for a 'reason other than Cause.'" (Mem. at 12 (emphasis added).) To begin with, this description is inaccurate. In fact, § 8.6 of the LPA gave Hebe the option to require "*the Partnership*" (i.e. Holdings) to redeem his interests. (Russell Decl. Ex. 5 at 16 (emphasis added).) In any case, Hebe did not exercise his § 8.6 option, and it expired in 2005. (Resp. 6.) The adjudication of Hebe's claims will not require the analysis of § 8.6, or any other part of the LPA; so they do not relate to the LPA, under Manetti-Farrow.

Finally, Seagrave discusses three district court cases, each of which applied a forum

selection clause in one contract to claims under a related contract. (Mem. 13-15.) None of the cases changes the results of the analysis under Manetti-Farrow. The Photogen, Inc. v. Wolf court applied the forum selection clause in a research agreement to claims brought under a related confidentiality agreement. 2001 WL 477226 at *4 (N.D. Ill. 2001). But in calling the claims "largely intertwined," the court's analysis was quite similar to Manetti-Farrow's, focusing on the facts that "the same actions could arguably breach [both] agreements, and the research agreement's terms . . . are relevant to whether any trade secrets were misappropriated . . . ." Id. In contrast, Hebe alleges no conduct that could breach the LPA, and the LPA's terms are not relevant to Hebe's employment dispute with Seagrave. The "same transaction" language quoted by Seagrave is part of the court's discussion of Massachusetts contract law (Mem. 15, Reply 5 (quoting id.)), which is not applicable to this venue motion. See Manetti-Farrow, 858 F.2d at 513 (federal law governs).

The Steel Dynamics, Inc. v. Big River Zinc Corp. defendant's contract to supply zinc to the plaintiff's Jeffersonville, Indiana, facility contained a forum selection clause. 2006 WL 1660599 at * 8 (N.D. Ind.) The court applied the clause to claims under the parties' contract for the Butler, Indiana, facility, because the contracts were "largely intertwined." Id. (quoting Photogen, 2001 WL 477226 at *4). Seagrave quotes the court's rationale that "the contracts were negotiated at the same time and arose from the same transaction" (Mem. 14, Reply 5 (quoting id.)), but omits the further statement that "perhaps even more importantly, . . . both parties lump the contracts together by referring to them as the 'October 21 agreements' and to a gross tonnage of zinc product in dispute with a gross amount of damages." Id. The court applied the forum selection clause in the Jeffersonville contract to claims under the Butler

Page -6- FINDINGS AND RECOMMENDATION

contract because the facts underlying all plaintiff's claims were intertwined.  In contrast, Hebe's Complaint does not even mention the LPA.

The CQ, Inc. v. TXU Mining Co. court applied the forum selection clause in the plaintiff's alleged contract to build a lignite-cleaning plant at defendant's mining facility, to claims under the confidentiality agreement executed by the parties prior to the submission of plaintiff's bid.  2006 WL 278155 at *1 (W.D. Pa.).  Seagrave quotes the court's finding that the agreements were "inextricably intertwined" because the confidentiality agreement was:

> intended to enable and be integral to the bid and proposal process.  Similarly, the disclosure of confidential or proprietary information was likewise integral to the contract and related processes.  All of Plaintiff's claims in that regard relate, at least indirectly, to the parties' business relationship evidenced by the contract. . . . Therefore, all of Plaintiff's claims are closely related to the purported [project] contract, and fall within the scope of the forum selection clause."
> (Mem. at 14 (quoting id. at *3).)

But Seagrave omits the following: "Indeed it would be almost impossible to factually disentangle any of Plaintiff's non-contractual claims, or its claims based on the confidentiality agreement, from its alleged contractual business relationship with Defendants."  2006 WL 278155 at *3.  The omitted language not only brings CQ, Inc. comfortably within Manetti-Farrow's approach, it also makes the instant case distinguishable.  In contrast, Hebe's claims based on the employment agreement require no analysis of the LPA-based partnership relationships.

## Conclusion

The court finds that the forum selection clause in the LPA does not apply to Hebe's claims, nor do his claims relate to the LPA.  The court therefore recommends that Seagrave's motion to dismiss (#4) be DENIED.

Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than April 24, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 9th day of April, 2007.

      /s/Donald C. Ashmanskas
    DONALD C. ASHMANSKAS
    United States Magistrate Judge